Harold Tessler, J.
The plaintiff, a domestic religious corporation, brought this action to cancel real estate taxes assessed by defendant, the City of New York, against premises conveyed to the plaintiff on February 4, 1965 for tax exempt purposes (Real Property Tax Law, § 420).
The closing of title on the sale to the plaintiff was .originally scheduled for January 25,1965, but was adjourned at plaintiff’s request until February 4, because the contributions of funds needed by the plaintiff to consummate the purchase had not been entirely collected by the earlier date. When the deed was delivered, the original date, January -25, was crossed out and the adjourned date, February 4, was inserted. The adjustments between the seller and the plaintiff f'dr taxes and other items were computed as of January 25, notwithstanding the adjournment.
The plaintiff has moved and the defendant has cross-moved for summary judgment, and the disposition of the motions turns upon the effect of the brief postponement of the closing.
The taxes involved here are those paid by the plaintiff- for the second half of 1964r-1965 (i.e., Jan. 1 to June 30, 1965) and those assessed by the defendant for 1965i-1966 (i.e., from July 1, 1965 to June 30, 1966).
The plaintiff’s position is that there is no question about its status as a qualified nonprofit organization or about its use of the property for tax-exempt purposes. (Indeed, a tax exemption was granted by the city on February 15, 1967 for the 1966-1967 tax year and thereafter.) The plaintiff therefore contends that it should be relieved from real estate taxes from the time it took title, February 4,1965.
The defendant maintains that the taxable or exempt status of the property for the 1965-1966 tax year is determined by the state of facts existing on January 25, 1965, which is the “ taxable status date” prescribed iby section 157 of the New York City Charter. As .stated before, this is the exact date originally *6 agreed upon for the conveyance to the plaintiff. The defendant contends, however, that since the plaintiff did not actually acquire title until 10 days after the taxable status date, the property did not enjoy a tax exempt status on January 25,1965, and it must therefore be treated as taxable for the entire 1965-1966 tax year.
First, it is apparent to this court that the original closing date of January 25 was not a mere coincidence. Obviously the closing date was so designated because of its significance in being the taxable status date so as to permit the plaintiff to enjoy an exemption for the 1965-1966 tax year (July 1, 1965 to June 30, 1966) by reason of its being a religious institution and thus entitled to exemption.
The taxable status date for property situated in New York City is governed by section 157 of the New York 'City Charter arid not, as plaintiff urges, by section 302 of the Beal Property Tax Law, which uses May 1 as the status date for certain cities and towns. Section 302 itself expressly provides that the “ taxable status of real property in a city or town not subject to the provisions of this section shall be determined as of the date provided by law applicable to such city or town ’ ’ and section 1606 of the Beal Property Tax Law contains an explicit disclaimer of any legislative intent ‘1 to repeal or otherwise affect the provisions * * * of any county, city or village charter ”.
The applicable tax status date, therefore, was January 25, 1965 (with respect to the 1965-1966 tax year). Although the plaintiff did not have title on that date, it is the court’s opinion there is basis for granting its motion for summary judgment in view of plaintiff’s enjoying “ ownership ” of the property on January 25, 1965 within the intent and contemplation of the law as indicated below.
The defendant’s position and cross motion for summary judgment are based upon a strict and most literal interpretation of the language of section 420 of the Beal Property Tax Law, which grants the exemption for real property “owned ” by certain nonprofit organizations. The defendant urges that ownership means legal title only and since the deed in this case concededly was' not delivered until after the taxable status date, no triable issue remains and the agreement to relate adjustments and other circumstances back to the original date fixed for the closing has no bearing on the issue.
The court disagrees. ISo literal an interpretation seems unwarranted in the circumstances of the instant case. It should be noted that the exemption statute requires not only that the *7 property be “ owned ” by a qualified organization, but that it be ‘ ‘ used exclusively ’ ’ for carrying out certain exempt purposes, yet the “ use ” requirement has not been applied literally. In Matter of North Manursing Wildlife Sanctuary v. City of Rye (28 A D 2d 891, mod. 28 A D 2d 960), the Appellate Division was considering the applicability of section 420 to property that was not being used for any purpose whatever on the date that it was placed on the assessment roll. The court did not apply a literal interpretation to the statutory requirement of “ use ” but held that such requirement could be satisfied by a good-faith intention to use the property for an exempt purpose. No reason has been suggested for applying a stricter construction to the requirement of “ ownership ” than to the co-ordinate requirement of ‘ ‘ use ’ ’.
The primary purposes of the statutory requirement of ownership would be to establish the unqualified right of the nonprofit corporation to use the property for exempt purposes and at the same time to negate the possibility that a nonexempt owner of legal title, for instance, might receive rental income from tax-exempt property. These purposes are satisfied if the exempt organization has legal title, but legal title is not indispensable to the unqualified right to use property. The definition of ownership in terms of the right to use the property for exempt purposes rather than in terms of legal title is suggested by the opinion in People ex rel. Nat. Commercial Bank v. Lewis (179 Misc. 140). 'There the court denied an exemption for property conveyed to a corporate trustee which was held in trust for, and used by, the real purchasers, the Bed Cross. The court did not rest on the state of the legal title, but based its decision in part upon the right of the trustee under the trust agreement to terminate the use and occupancy of the property by the Bed Cross.
In the instant case, the property had been vacated by the seller before the original closing date and the parties herein, as between themselves for adjustment and all other purposes, regarded January 25 as the law date. This arrangement, of course, implies that the plaintiff was treated as owner of the property from January 25 on, and particularly insofar as financial details were concerned. Under the facts and circumstances existent herein, there is no question that the use and occupancy of the premises or, to be more precise, the right to use the premises between January 25 and February 4, 1965, was in the plaintiff — and was so intended and agreed by the parties.
Tn accordance with the foregoing, it follows that the portion of plaintiff’s motion with respect to taxes for the second half *8 of 1964 — 1965 must be denied, the status date for that tax year being January 25, 1964, a year before plaintiff took title to the property or enjoyed “ ownership ” thereof and defendant’s cross motion for summary judgment with respect to that part of the taxes is granted.
Plaintiff’s motion for summary judgment is granted to extent of the sum of $1,157:50 representing the taxes for 1965-1966 (July 1, 1965 to June 30, 1966).